*Gleen & Carlisle, for appellants.*

---

## B. H. BRISTOW *v.* A. H. BOWMAN, ET AL.

## W. A. MERRIWEATHER, ET AL., *v.* SAME.

**Street Improvements—Assignment of Contract—City Charter.**
A contract to improve a street entered into pursuant to the provisions of a city ordinance after advertisement for bids, may be assigned by consent of the city and this does not constitute a new contract.

**Apportionment of Cost.**
Where under a city ordinance and contract the cost of a public improvement is to be assessed among adjoining lot owners, an increased price being chargeable against corner lots, and such improvement is made through unplatted ground, no increased price can be assessed on the theory that when platted some of the lots will be corner lots.

**APPEAL FROM LOUISVILLE CHANCERY COURT.**

February 16, 1875.

OPINION BY JUDGE COFER:

These appeals, although prosecuted on separate records, involve the same questions, and will be disposed of in a single opinion.

In pursuance of an ordinance regularly passed by the general council of the city of Louisville, and approved by the mayor, for the improvement of Eighteenth street, in said city, advertisement was made for bids for doing the work, and separate contracts therefor, including in each a single square, were awarded to George W. Hider, who entered into written contracts with the city, stipulating that he would perform the work according to the requirements of the contracts within nine months from the date of their approval by the general council, or within such additional time as might be directed or permitted by the council; the city, however, reserved the right to suspend the work at any time.

The contracts were approved by the general council on the 17th of October, 1872, and without having done any work under either of them up to that time, Hider, on the 13th of March, 1873, entered into an agreement with the appellees, Bowman & Co., which is endorsed on the back of his contracts with the city, and is in these words:

"This endorsement witnesseth, that the within contract is hereby transferred to Bowman and Kerr, with James Callahan as surety, and they, the said Bowman and Kerr and James Callahan, acknowledge themselves bound by the same terms and upon the same conditions in every way as George Hider, the contractor, and J. C. Dennis, his surety, were bound, and they, Hider and Dennis, relinquish to Bowman and Kerr all their right, title and interest herein."

This writing was signed by the mayor, surety, Callahan, and by Hider, and attested by the city engineer, and was reported to and approved by both branches of the general council.

Bowman and Kerr, under the style of Bowman & Co., did the work specified in the contracts with Hider, and brought these suits on apportionment warrants against the owners of adjacent property for the price of the work done under the contracts, and judgments having been rendered in their favor, these appeals are prosecuted from those judgments. Numerous grounds of defense were set forth and relied upon in the answers, only two of which are insisted on here.

1. The city charter requires "that contracts for work and material shall be awarded to the lowest and best bidder for all work done by city authority"; and it is claimed that the contract entered into between Bowman and Kerr, Hider and the city, was a new contract for work to be done by city authority, and not having been let to the lowest and best bidder after advertisement duly made, is invalid in view of this provision of the charter; and several authorities are cited to sustain this position.

Hider's contract was not assignable, and he could not legally transfer it to Bowman & Co., without the assent of the city, and the only effect of the action of the mayor and council in regard to the matter was to give the consent of the city to the assignment. It is clear that none of the parties intended that it should have the effect of canceling the old and making a new contract, and that they all understood it as merely a transfer of Hider's contract to Bowman & Co.; and to decide that the transaction was not what all the

29

parties to it intended and understood it to be, and what the language used imparts that it was, would be to decide that no contract made with one man to improve a street could, under any circumstances, be transferred to another. We are unable to perceive any reason founded in legal analogy or in consideration of public policy, which would pronounce such a transaction illegal if fairly entered into.

The cases relied upon by counsel for the appellants are unlike this. In *Mitchell v. City of Milwaukee, et al.,* 18 Wis. 99, the contract was let to the owner of the adjacent property at three cents per yard, and he having failed to do the work as required, it was re-let without advertising or competition, to a third person at forty-two cents per yard, and the court held that a re-letting, without advertisement, was a violation of a provision of the charter of Milwaukee, similar to that just quoted from the charter of Louisville. Here was clearly a new contract, and it was, no doubt, correctly held to be void. In this case there was no new contract, so far as the city was concerned; the city was bound from the execution of the contract with Hider, and yet remains bound by the same contract. All the city has done was to consent to the transfer of an exist-ing contract to another person. So far as the record shows, Hider was not only bound to do the work he had contracted to do, but the city was bound to allow him to do it, and would have been bound to apportion the cost against the owners of adjacent property.

In the case of Mitchell against Milwaukee, the contractor had committed a breach of his contract, and the city was thereby released from all obligation to permit him to do the work. That contract was at an end, and the contract entered into was a new contract.

It does not matter whether Hider and his surety were released from liability on the contract or not, and therefore the other authorities relied upon by the counsel for the appellants are not in point. If it were conceded that Hider was released, it would not follow either that the city or property holders were released, or that the transfer of the contract to appellees was the making of a new contract to improve 18th street.

2. The appellants' ground all lies west of Eighteenth street, and has not been laid out into squares, and has no streets running through it at right angles with that street, and they have, therefore, no corner lots; but in making the apportionment against each of them, they were charged 25 per cent. additional as upon corner lots 30

feet wide and 200 feet deep. We are of opinion that this was incorrect. *Dulaney & Co. v. Bowman & Co.,* Mss. Opinion.

It is only when the ground has been divided into squares that the charter authorizes an additional assessment upon corner lots, and as the appellants pointed out in their answer, this specific error in the apportionment it should have been corrected. It is true the error amounts to but little, but the amounts are sufficient to prevent the cases from falling within the maxim that the law does not regard small matters.

Wherefore the judgments against the appellants, Bristow, Merriweather, and Cain and wife are each *reversed,* and the causes are remanded with directions to correct the apportionment as herein directed, and then to render judgment for the amounts thus ascertained to be due.

*A. E. Wilson, Barr & Goodloe, Humphreys, for appellants.*
*Russell & Helm, T. L. Bennett, for appellees.*